UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| XUDONG SONG, et al., | ) | CASE NO. 1:15-cv-1438 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| DAVOR ROM, et al., | ) | **AND ORDER** |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

Before the Court is the motion for summary judgment filed by defendants Davor Rom ("Rom") and IIP Ohio, LLC ("IIP Ohio") (collectively, "defendants'). (Doc. No. 115 ["Mot."].) Plaintiffs have filed their brief in opposition (Doc. No. 125 ["Opp'n"]) and defendants filed a reply (Doc. No. 128 ["Reply"]). For the reasons discussed herein, the motion is denied.

## I. BACKGROUND

This case has a complicated procedural background, but the factual allegations underlying the remaining claims are fairly straightforward. The third amended complaint is the operative pleading (Doc. No. 67 ["Compl."]), except that plaintiffs have withdrawn the breach of contract claim in Count 6. (*See* Opp'n at 4534[1].) There are no pending counterclaims or crossclaims.

Plaintiff Xudong (Dennis) Song ("Song") is a Chinese businessman who is the sole member of plaintiff Sunshine International LLC ("Sunshine") (collectively, "plaintiffs"). Plaintiffs allege that defendants Rom and his company IIP Ohio (through an intricate web of businesses that are not all parties), committed fraud/fraudulent inducement with respect to certain real estate

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

contracts. Plaintiffs claim that defendants identify distressed properties in the United States that they can acquire cheaply. Then, by way of internet real estate portals, they market the properties to foreign investors as newly renovated and professionally managed, with guaranteed return on investment ("ROI") above 10%. These foreign investors are typically not in a position to evaluate firsthand any property's worth or condition.

Between 2013 and 2014, Song purchased from defendants[2] 60 real estate parcels located in Cleveland, Akron, and Columbus; he subsequently transferred all the parcels to Sunshine. Song alleges that, unbeknownst to him, he purchased these properties for nearly 150% what defendants had paid. Song alleges that Rom and IIP Ohio promised to lease back and manage the properties for Song, and guaranteed a net return for the first two years of $6,300 per property payable every three months. Defendants also allegedly represented that all the properties were in prime locations with good local schools, and all were fully tenanted. As it turned out, according to Song, the properties were located in extremely run-down areas, were not renovated and not maintained (having serious problems with leaks, mold, damaged floors/walls/roofs, electrical malfunctions, and broken furnaces); many were vacant; some are facing potential demolition by the cities where they are located. The promised management services were allegedly to include leasing, collecting rents, maintenance of the properties, utilities and services management, repairs, and disbursing funds for mortgage payments and property taxes. Defendants also allegedly assured Song that the income generated from the properties would be sufficient to pay off the existing mortgages. According to plaintiffs, none of that has happened.

---

[2] Through mediation services graciously provided by U.S. District Judge Dan Aaron Polster, plaintiffs settled their claims against defendant IIP Akron, LLC, as well as any claims against Rom that arose under or were related to IIP Akron. (*See* Doc. No. 135.)

What remains of the complaint are two counts against defendants IIP Ohio and Rom: Count 1 alleging fraud/fraudulent inducement, and Count 5 seeking to pierce the corporate veil as to Rom.[3] The gravamen of Song's claim in Count 1 is that, in buying the properties, entering into the management agreements, and continuing business with defendants, he reasonably relied upon pre-agreement representations. He claims his decisions were substantially based upon defendants' repeated representations regarding the value and condition of the various properties and the ROI that he would realize in the form of immediate cash flow. He alleges that defendants, taking unfair advantage of his lack of fluency with English and utilizing an interpreter in their own employ to conduct the negotiations, knowingly made false representations to induce him to purchase the properties, with no intention of following through on their representations and/or promises.

## II. DISCUSSION

**A.    Summary Judgment Standard**

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

An opposing party may not rely merely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A movant is not required to file affidavits

---
[3] Plaintiffs have withdrawn the breach of contract claim in count 6.

or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina College v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992).

The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

**B.     Analysis**

    **1.     Fraud/Fraudulent Inducement (Count 1)**

To assert a successful claim of fraudulent inducement, plaintiffs must establish the following: "(1) a representation material to the transaction was made; (2) it was made falsely, with knowledge that it was false or with utter disregard or recklessness regarding whether it was false; (3) the intent to mislead another into reliance on that representation; (4) justifiable reliance on the representation; and (5) injury proximately resulting from that reliance." *Barnes v. Reserve Energy Exploration*, 68 N.E.3d 133, 139 (Ohio Ct. App. 2016) (citing *Burr v. Stark Cnty. Bd. of Comm'rs*, 491 N.E.2d 1101 (1986)). "A classic claim of fraudulent inducement asserts that a misrepresentation of facts outside the contract or other wrongful conduct induced a party to enter into the contract." *Paragon Networks Int'l v. Macola, Inc.*, No. 9-99-2, 1999 WL 2800385, at *4 (Ohio Ct. App. Apr. 28, 1999) (quoting *ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 578 (Ohio 1998) ("Examples include a party to a release misrepresenting the economic value of the released claim, or one party employing coercion or duress to cause the other party to sign an agreement.")).

Defendants point to three paragraphs in the complaint as forming the basis of plaintiff's fraudulent inducement claim. (*See* Mot. at 2112, citing Compl. ¶¶ 19, 23, 27.) Notably, defendants do not actually deny that any of the alleged representations were made. Rather, they argue that "[p]arties may not prove fraud by claiming that the inducement to enter into an agreement was a promise that was within the scope of the integrated agreement but was ultimately not included in it." (Mot. at 2112-13, quoting *Citicasters Co. v. Bricker & Eckler, L.L.P.*, 778 N.E.2d 663, 666

5

(Ohio Ct. App. 2002) (further citation omitted).) In opposition to this argument, plaintiffs point to an order in a similar case before another branch of this court holding:

> Under Ohio law, the parol evidence rule does not apply to a fraudulent inducement when "the contract, the terms of which were not in dispute, was induced by the contractor's fraudulent representation." Here, the Plaintiffs do not object to the terms of the purchase agreements for the Properties. Rather, they sue the Defendants over marketing double digit return on the Properties. Consequently, the parol evidence rule does not bar the Plaintiffs fraudulent inducement claim.

*He v. Rom*, No. 15-cv-1869, 2016 WL 5682012, at *12 (N.D. Ohio Oct. 3, 2016) (footnote and citation omitted), *appeal docketed*, No. 17-3411 (6th Cir. Apr. 24, 2017).[4] Plaintiffs argue that they are permitted to submit parol evidence to prove that defendants' misrepresentations induced them to enter into the contracts for purchase of the relevant properties.

This case is somewhat similar to *Cronkelton v. Guar. Constr. Servs.*, 988 N.E.2d 656 (Ohio Ct. App. 2013), where the Ohio court of appeals affirmed the trial court's admission of parol evidence to prove a fraud claim. In *Cronkelton*, plaintiff agreed to purchase a foreclosed car wash property from a receiver. During the negotiations, Cronkelton, having inspected the property,[5] made clear that it had to be winterized and he was assured by the receiver that it would be. As it turned out, winterization was not possible because of the design and plumbing of the particular structure. The receiver knew this, but never disclosed that fact to Cronkelton. In addition, the receiver was aware, and did not disclose, that he had directed the discontinuance of the utilities for the structure due to unpaid bills and a his desire to cut losses. Following the closing on the property, Cronkelton discovered significant property damage clearly indicative that winterization had not

---

[4] "The parol evidence rule states that 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" *Galmish v. Cicchini*, 734 N.E.2d 782, 788 (Ohio 2000) (quoting 11 WILLISTON ON CONTRACTS, § 33:4, at 569-70 (4th Ed. 1999)).

[5] Admittedly, this element of personal inspection by the plaintiff is a difference between *Cronkelton* and the instant case, since Song never inspected any of the properties he purchased.

occurred. The receiver argued that the sale contract was an "as is" contract, but the court found that the receiver "made representations to Cronkelton that he never intended to keep[,]" and that they "were made to induce Cronkelton to purchase the property." *Id.* at 663. Plaintiffs make similar arguments that the pre-contract representations of defendants induced them to purchase the properties, and that the properties then failed to live up to the representations.

Defendants also assert that the alleged representations relied upon by plaintiffs "'concerning what will occur in the future are considered to be predictions and not fraudulent misrepresentations.'" (Mot. at 2115, quoting *Williams v. Edwards*, 717 N.E.2d 368, 374 (Ohio Ct. App. 1998).) But *Williams* also identifies an exception to this rule that a factfinder could find applicable here, namely, that "where an individual makes a promise concerning a future action, occurrence, or conduct and, at the time he makes its, has no intention of keeping the promise[ ] . . . [t]he individual possesses actual fraudulent intent and a claim for fraud may be asserted against him." *Id.*

Relying upon an extensive quote from *Bender v. Logan*, No. 14CA3677, 2016 WL 4208549, at *12-13 (Ohio Ct. App. Aug. 1, 2016), defendants also argue that plaintiffs are unable to establish the justifiable reliance element of a fraudulent inducement claim because, "[h]ad Song simply read the respective purchase and sale agreements, he could have and would have known that (1) Defendants did not guaranty any return on investment for these properties, and (2) only one of the transactions came with the first year management fee paid by Defendants." (Mot. at 2118.)

But, as properly pointed out by plaintiffs in opposition, defendants' lengthy quote from *Bender* conveniently omits the following:

> In determining whether reliance was justified, the factfinder may consider the various circumstances involved, such as the nature of the transaction, the form and materiality of the representation, the relationship of the parties, the respective intelligence, experience, age, and mental and physical condition of the parties, and their respective knowledge and means of knowledge.

*Bender*, 2016 WL 4208549, at *12 (internal quotes and citations omitted). Here, a factfinder is needed to determine whether there was justifiable reliance under these circumstances.

Finally, defendants argue that plaintiffs will be unable to establish any actual injury caused by their alleged reliance because Song has never visited any of the properties and "is not in a position to have knowledge from which he could testify concerning the actual value of these properties at the time of the sale." (Mot. at 2119.) Defendants point out that plaintiffs have not identified any expert who can offer testimony on the represented value of the property or the actual value of the property. But, it is not necessarily so that plaintiffs will be unable to establish an *injury* simply because they may not be able to quantify their *damages* for any such injury. Further, as noted by Judge Gwin in his recent opinion in *He v. Rom*, No. 1:15-cv-1869, 2017 WL 1054814 (N.D. Ohio Mar. 21, 2017), the actual value stated by the purchase agreements, coupled with photographs of the properties near the time of purchase, was "sufficient [evidence] to give the jury a 'reasonable basis for computation [of damages], even though the result is only approximate.'" *Id.* at * 4 (quoting *Massman Constr. Co. v. Tennessee Valley Auth.*, 769 F.2d 1114, 1123 (6th Cir. 1985)). Presumably, plaintiffs may be able to present just this kind of evidence for the jury. Therefore, it would be premature to decide on summary judgment that plaintiffs will be unable to establish actual injury and/or damages.

### 2. Piercing the Corporate Veil (Count 5)

Plaintiffs allege that Rom had complete control over IIP Ohio such that he should be held individually liable for the company's actions. Under Ohio law, "the corporate form may be

disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005) (quoting *Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos., Inc.,* 617 N.E.2d 1075, 1086 (Ohio 1993)).

Defendants argue that, since they are entitled to summary judgment on Count 1, any claim for piercing the corporate veil, to make Rom individually liable for the actions of IIP Ohio, is moot. In view of the Court's determination that Count 1 cannot be resolved on summary judgment, it is premature to decide the issue of whether to set aside the corporate form.

### III. CONCLUSION

For the reasons set forth herein, the motion for summary judgment (Doc. No. 115) filed by IIP Ohio, LLC and Davor Rom is **denied**.

**IT IS SO ORDERED**.

Dated: June 8, 2017

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**